## In re HARBER.

(Circuit Court of Appeals, Second Circuit. June 5, 1925.)

No. 343.

**1. Bankruptcy ⟨⟩424, 426(2)—Judgment against bankrupt held dischargeable in bankruptcy; "fiduciary capacity."**

Where bankrupt's mismanagement of corporation caused stock securing notes to become worthless, judgment requiring bankrupt to pay balance due without sale of stock, *held* dischargeable; it not being debt created by fraud, embezzlement, misappropriation, or defalcation while acting in fiduciary capacity, within Bankruptcy Act, § 17, subd. 4 (Comp. St. § 9601), nor for malicious injuries to person or property, within subdivision 2, "fiduciary capacity" including only formal fiduciaries.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fiduciary. Capacity or Character.]

**2. Bankruptcy ⟨⟩391(3)—In determining motion to vacate stay, Circuit Court of Appeals will not look to affidavits or beyond pleadings and judgment.**

In determining motion to vacate stay of proceedings on judgment, Circuit Court of Appeals will not look to affidavits or beyond pleadings and judgment.

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

In the matter of Morris Harber, bankrupt. On petition of Louis A. Propp to revise an order in bankruptcy of the District Court, staying the petitioner from further proceedings in execution of a judgment obtained in the Supreme Court of the state of New York. Order affirmed.

Bennett, Werner & Grenthal, of New York City (Lewis F. Glaser, of New York City, of counsel), for petitioner.

Zalkin & Cohen, of New York City (S. Marshall Kronheimer and Moses Cohen, both of New York City, of counsel), for respondent.

Before ROGERS, HOUGH, and HAND, Circuit Judges.

HAND, Circuit Judge. Harber, the bankrupt, was adjudicated on his voluntary petition on June 9, 1924. On the same day he obtained from the bankruptcy court a stay of any further proceedings in execution of a judgment obtained by Propp, the petitioner to revise, against him in the state court on November 26, 1923. On June 16, 1924, Propp moved before the bankruptcy court to vacate the stay and this was denied on July 24, 1924. The sole question was whether the stay should continue, and this in turn depends upon whether the judgment was upon a claim dischargeable in bankruptcy.

[1] The action in the state court was against the bankrupt and a corporation. The complaint was in substance as follows: Propp and Harber had owned all the stock of an earlier corporation of the name of Schwartz, Harber & Propp, Inc. They had executed a contract by which Propp agreed to sell Harber 200 shares of the corporation for a small amount paid down, and, as to the rest, in four promissory notes. Harber was to hold 51 per cent. of the shares of the corporation, or of any successor corporation, as security for the notes. Thereafter the successor corporation was organized by Harber and his brothers, which took over the assets of the first. Harber remained the majority stockholder, and was in full control of this business, but had neglected to set aside 51 per cent. of the shares of the new company as security. The contract provided that, upon default in the payment of the notes, Harber should at once transfer to Propp the shares so held as security; this he had failed to do, though he defaulted. The contract further provided that, upon receiving the shares, the plaintiff might take over the company, continue or dissolve the business, and upon dissolution pay himself out of the assets. Harber had diverted the profits of the company to his own use in larger proportion than he was entitled to do, and had refused to pay the balance of the purchase price, saying that he would close up the business. In pursuance of this policy he had so conducted it as to make the stock worthless. The complaint

prayed judgment that Harber specifically perform the contract, assign the shares, and that after its delivery and the sale of the assets he should be decreed to pay any deficiency.

The cause went to trial and resulted in a decree for Propp, adjudging that the stock was worthless, and that, as it would realize nothing upon any sale, none was necessary. It decreed that Harber pay Propp the balance due upon the notes. In the decision upon which the decree stood, the state court found that Harber had so conducted the corporation as to make the stock valueless by removing and disposing of the assets of the corporation. It is clear that the debt which was merged in the decree of the state court was not within subdivision 4 of section 17 of the Bankruptcy Act (Comp. St. § 9601). It was not created by the bankrupt's "fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity." This language is in substance borrowed from the act of 1867 (14 Stat. 517), under which it was settled that the phrase "fiduciary capacity" attached to the whole clause, and included only formal fiduciaries, such as express trustees, executors, administrators and the like. Hennequin v. Clews, 111 U. S. 676, 4 S. Ct. 576, 28 L. Ed. 565. The same interpretation obtains in respect of the act of 1898, under familiar principles. Crawford v. Burke, 195 U. S. 176, 25 S. Ct. 9, 49 L. Ed. 147 (a case which concerned the embezzlement by a stockbroker of stocks held by him in pledge); In re Adler, 152 F. 422, 81 C. C. A. 564 (C. C. A. 2).

Propp also seeks to come within subdivision 2 of section 17, on the ground that his debt is on a liability for "malicious injuries to the person or property of another." The complaint in the state court admits of no such interpretation. It is true that the twelfth article of the complaint alleges that Harber diverted to his own use sums of money belonging to the corporation, but this does not control or even color the character of the suit, which was to compel Harber specifically to perform the agreement, to get possession of the pledge, to liquidate the business, and hold him for any deficiency. The findings of the court were necessary only in order to dispense with the formalities of selling the shares, which had become valueless, and the final decree was for the amount of the purchase price. It awarded judgment for that amount, and not for the injury done to the stock. There are no allegations of the extent of those injuries; that is, what the stock

had been worth before, and how much damage Harber had done by his mismanagement. [2] Nor is it alleged that this injury was "malicious." Had the suit been for such malicious injury, we need not consider whether it would have fallen within the rule of McIntyre v. Kavanaugh, 242 U. S. 138, 37 S. Ct. 38, 61 L. Ed. 205, or Wood v. Fisk, 215 N. Y. 233, 109 N. E. 177. We do not look to the affidavits, or beyond the pleadings and judgment, in determining such motions. In re Adler, supra.

Order affirmed.